UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

SPIRTAS COMPANY, d/b/a )
Spirtas Wrecking Company, )
f/k/a Arnold R. Spirtas Company, )
SPIRCO ENVIRONMENTAL, INC., )
f/k/a Spirco Services, Inc., )
SPIRTAS INDUSTRIAL SERVICES, INC., )
SERVICE CONTRACTORS, INC., )
ABATEMENT SERVICES, INC., )
ARNOLD R. SPIRTAS, )
SANDRA T. SPIRTAS, and )
JOEL A. SPIRTAS, )
 )
           Plaintiffs, )
 )
    v. ) No. 4:05 CV 100 DDN
 )
THE INSURANCE COMPANY OF )
THE STATE OF PENNSYLVANIA, )
 )
           Defendant. )

**MEMORANDUM**

    This matter is before the court on the motion of plaintiffs Service Contractors, Inc., Abatement Services, Inc., Arnold Spirtas, Sandra T. Spirtas, Joel A. Spirtas, Spirtas Company, Spirco Environmental, Inc., and Spirtas Industrial Services, Inc., for partial summary judgment against defendant Insurance Company of the State of Pennsylvania (ICSP) on plaintiffs' claim for declaratory judgment and Count I of defendant's counterclaim[1] (Doc. 59), and the motion of defendant ICSP for partial

---

[1] For clarification, plaintiffs state they are not seeking summary judgment on Count I of ICSP's counterclaim as it pertains to two other bonds referred to therein, the Nebraska Revenue Bond and the McCarthy bond. ICSP does not expressly state that it is not seeking summary judgment on these issues, but it does not argue or mention them in its motion or memoranda in support. ICSP states "Plaintiffs' Motion presents exactly the same issue as ICSP's motion: whether Plaintiffs are liable to ICSP under two General Indemnity Agreements." (Doc. 71 at 1-2.) Therefore, this court will not address whether summary judgment should be granted on the Nebraska Revenue and McCarthy bond issues. Further, ICSP vocally dismissed the portions of its counterclaim that refer to the Nebraska and McCarthy bonds at the hearing held February 3, 2006. Therefore, ICSP's Count 1 counterclaims regarding the Nebraska Revenue Bond and the McCarthy bond will be dismissed.

summary judgment in its favor on plaintiffs' complaint and for summary judgment of Count I of defendant's counterclaim (Doc. 57).

The parties have consented to the authority of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Doc. 17.) A hearing was held on these motions on February 3, 2006.

## I. The Pleadings

Plaintiffs commenced this action for declaratory judgment against defendant ICSP in the Circuit Court of St. Louis County. ICSP removed the action to this court on January 21, 2005, based on diversity of citizenship of the parties. (Doc. 1.)

Plaintiffs allege that Spirco Environmental was hired to perform asbestos removal for Wellsford Commercial Properties, LLC, in 1997. Defendant ICSP served as a surety on the project. A dispute arose regarding that work and Wellsford submitted a claim on the ICSP bond. All claims between Wellsford, Spirco Environmental, and ICSP were arbitrated beginning in 1998. The arbitration panel found in favor of Spirco Environmental in 2002. By letter to plaintiffs dated November 29, 2004, defendant ICSP claimed indemnification in the amount of $810,475.57 for its legal fees for its participation in the arbitration.

Plaintiffs allege they have no responsibility to indemnify defendant ICSP, because it voluntarily participated in the arbitration. Plaintiffs seek a declaratory judgment that it is not liable for indemnification.

Defendant ICSP alleges that plaintiffs have failed to state a claim upon which relief can be granted, that plaintiffs have waived relief and are estopped from seeking relief, that plaintiffs' claims are barred by the doctrines of unclean hands and laches, that it was entitled to defend itself under the common law of equity in the arbitration, and that it has a common law right of indemnity above and beyond that provided by the indemnity agreements between the parties.

---

Further, neither party has moved for summary judgment on Count II of ICSP's counterclaim. In Count II, ICSP seeks indemnification for its fees under a common law theory of indemnification. However, it vocally dismissed Count II at the hearing.

In Count I of its counterclaim ICSP seeks indemnification from plaintiffs under the general indemnity agreements (GAIs) entered into between the parties.

## II. Summary Judgment Arguments

Plaintiffs argue in their motion for summary judgment that ICSP had no duty to participate in the arbitration under the bond, and any damages it incurred were not "by reason of having executed any bond," as required by the GAIs, but were because it voluntarily participated in the arbitration. Plaintiffs further argue that not all of them agreed to ICSP's involvement in the arbitration.

Defendant ICSP argues that the GAIs are clear and enforceable, and require plaintiffs to indemnify it for all liabilities, costs and losses as a consequence of executing the bonds. It argues that absent a showing that it acted in bad faith, it is entitled to the attorneys' fees and costs because it made a prima facie showing of the costs it incurred and plaintiff has not rebutted this. ICSP also argues it is entitled to statutory interest under Mo. Rev. Stat. § 433.050.

## III. Summary Judgment Standard

Summary judgment must be granted, if the pleadings and proffer of evidence demonstrate that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrell, 477 U.S. 317, 322 (1986); Union Elec. Co. v. Southwestern Bell Tel. L.P., 378 F.3d 781, 785 (8th Cir. 2004). The evidence is viewed in the light most favorable to the non-moving party. Union Elec. Co., 378 F.3d at 785. "A fact is 'material' if it might affect the outcome of the case and a factual dispute is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Scottsdale Ins. Co. v. Tri-State Ins. Co. of Minn., 302 F. Supp. 2d 1100, 1103 (D.N.D. 2004).

Initially, the moving party must demonstrate the absence of an issue for trial. Celotex, 477 U.S. at 323. Once a motion is properly made and supported, the nonmoving party may not rest upon the allegations in its pleadings but must proffer admissible evidence of

-3-

specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); Howard v. Columbia Pub. Sch. Dist., 363 F.3d 797, 800 (8th Cir. 2004), cert. denied, 2004 WL 2153070 (U.S. Nov. 1, 2004); Krein v. DBA Corp., 327 F.3d 723, 726 (8th Cir. 2003).

## IV. Undisputed Facts

In February 1997, plaintiff Spirco Environmental, an asbestos abatement company, and Wellsford Commercial Properties, LLC, entered into a contract whereby Spirco Environmental would remove asbestos from a building in New Jersey for $2,833,859.00. As a condition of this contract, Spirco Environmental obtained a performance bond on the project from defendant ICSP. This bond provided that:

> The Contractor and the Surety, jointly and severally, bind themselves, their heirs, executors, administrators, successors and assigns to the Owner for the performance of the Construction Contract, . . ..

(Doc. 62 Ex. 1.) The bond incorporated by reference the construction contract between Wellsford and Spirco Environmental.

Spirco Environmental and ICSP also entered into two other contracts, captioned "General Agreement of Indemnity." (Doc. 62 Ex. 2, 3.) General Agreement of Indemnity I (GAI-I) was entered into on July 31, 1995 (id. Ex. 2) and General Agreement of Indemnity II (GAI-II) was entered into on November 20, 1997 (id. Ex. 3). Both agreements provided, in relevant part:

> [u]ndersigned agree to pay to Surety upon demand any premium due and all loss and expense, including attorney fees, incurred by Surety by reason of having executed any Bond. An itemized statement of loss and expense incurred by Surety, sworn to by an officer of Surety, shall be prima facie evidence of the fact and extent of the liability of Undersigned to Surety in any claim or suit by Surety against Undersigned.

(Doc. 62 Exs. 2, 3.) GAI-I was signed by Spirco Environmental, Joel Spirtas, Arnold Spirtas, Sandra Spirtas, Service Contractors, Abatement Services, and Spirtas Wrecking Company. (Id. Ex. 2.) GAI-II was signed by Spirtas Wrecking, Spirco Environmental, Spirtas Industrial Services,

-4-

Spirco Services, Service Contractors, Abatement Services, Joel Spirtas, Arnold Spirtas, and Sandra Spirtas. ( Id. Ex. 3.)

A dispute arose between Wellsford and Spirco Environmental regarding the asbestos removal contract.[2] Wellsford submitted a claim on the ICSP performance bond, which ICSP denied after an investigation into the dispute. In the meantime, Wellsford hired a second contractor to perform the remaining asbestos removal work on the building.

Wellsford and Spirco Environmental submitted their dispute to the American Arbitration Association through an arbitration clause in the asbestos removal contract. (Doc. 60 at 2.) The arbitration clause provided, in relevant part:

> **4.5.1 Controversies and Claims Subject to Arbitration.** Any controversy or claim arising out of or related to the Contract, or the breach thereof, shall be settled by arbitration . . . .
>
> * * *
>
> **4.5.5 Limitation on Consolidation or Joinder**. No arbitration arising out of or relating to the Contract Documents shall include, by consolidation or joinder or in any other manner, the Architect, the Architect's employees or consultants, except by written consent containing specific reference to the Agreement and signed by the Architect, Owner, Contractor and any other person or entity sought to be joined. No arbitration shall include, by consolidation or joinder or in any other manner, parties other than the Owner, Contractor, a separate contractor as described in Article 6 and other persons substantially involved in a common question of fact or law whose presence is required if complete relief is to be accorded in arbitration. No person or entity other than the Owner, Contractor or a separate contractor as described in Article 6 shall be included as an original third party or additional third party to an arbitration whose interest or responsibility is substantial. Consent to arbitration involving an additional person or entity shall not constitute consent to arbitration of a dispute not described therein or with a person or entity not named or described therein. The foregoing agreement to arbitrate and other agreements to arbitrate with an additional person or entity duly consented

---

[2]After Spirco Environmental claimed it had performed all of the asbestos removal work under the contract, Wellsford alleged that asbestos had been found in the building after Spirco Environmental claimed it was finished. Wellsford refused to pay Spirco Environmental the $150,733 balance left on the contract. (Doc. 61 Attach. 1.)

-5-

> to by parties to the Agreement shall be specifically enforceable under applicable law in any court having jurisdiction thereof.

(Doc. 62 Ex. 4 at 12-13.) Spirco Environmental sought to recover the $150,733 balance of the contract, and Wellsford sought $4 million in damages for Spirco Environmental's alleged breach of the contract. In addition to Wellsford's claims against Spirco Environmental, it asserted a counterclaim against ICSP and sought to join ICSP as a party, alleging that ICSP failed to perform its obligations under the bond in bad faith.

On March 30, 1999, Wellsford submitted a letter proposal to ICSP's counsel, with spaces where Spirco Environmental's counsel and a Spirco Environmental representative were to sign to indicate their consent for ICSP to participate in arbitration. This letter set forth an agreement between Wellsford and ICSP, in which Wellsford agreed to withdraw its claims for bad faith against ICSP if ICSP agreed the participate in the arbitration.[3] The letter provided that:

> . . . Wellsford and [ICSP] will arbitrate their respective claims and defenses in consolidated arbitration that will encompass Spirco's pending claims against Wellsford, together with Wellsford's defenses to those claims and counterclaims against Spirco.
>
> In exchange for ICSP's agreement to arbitrate as outlined above, Wellsford will withdraw the pending counterclaims against ICSP . . . .

(Doc. 62 Ex. 5.) ICSP signed this document. (<u>Id.</u>) Other than Spirco Environmental, neither ICSP nor Wellsford asked the plaintiffs whether they agreed to ICSP's participation in the arbitration. Spirco Environmental's attorney signed the consent agreement.

ICSP participated in the arbitration. The claims presented in arbitration were Spirco Environmental's claims against Wellsford, Wellsford's claims against Spirco Environmental and ICSP, and Spirco

---

[3] Had Wellsford brought a bad faith claim against ICSP, ICSP alleges that its damages would not have been limited to the penal limit of the bond, which was $2,833,859, but would have subjected ICSP to damages in excess of that limit, because Wellsford was seeking compensatory damages of $4 million and punitive damages of $4 million. (Doc. 61 Attach. 1 at 8.)

-6-

Environmental's and ICSP's claims against PMK Group, Inc.[4] In a letter dated June 13, 2000, Spirco Environmental and ICSP agreed that the arbitration excluded claims they might have against each other. (Doc. 61 Attach. 11.) In an April 10, 2000 letter, plaintiff Arnold Spirtas's counsel stated that he found it "disturbing that the Bonding Company is actively involved in this case . . . ." (Doc. 62 Ex. 11.)

There were over 40 arbitration hearings, all of which were attended by counsel for ICSP, an ICSP representative, or ICSP's expert. In August 2002, the arbitration panel entered an award in favor of Spirco Environmental. (Doc. 60 at 8.) The panel found that the finding for Spirco Environmental was "dispositive" of Wellsford's claims against ICSP. By letter dated November 24, 2004, and received by plaintiffs on November 29, 2004, ICSP demanded payment of $810,475.57 from the plaintiffs under GAIs I and II.[5] (Doc. 60 at 9, Exs. 12, 13.)

### V. Discussion

#### A. Plaintiffs' Claim for Declaratory Judgment

Both plaintiffs and defendant have moved for summary judgment in their favor on plaintiffs' claim for declaratory judgment. Plaintiffs argue that under the terms of the bond issued by ICSP, ICSP had no duty to arbitrate and therefore did not incur its arbitration expenses "by execution of any bond" as required under the GAIs. ICSP argues that the provision clearly requires that plaintiffs indemnify it for all losses, attorneys' fees, and interest.

As an initial matter, the court must decide which state's law applies to the interpretation of the indemnity agreements. The court

---

[4] Engineering firm PMK Group, Inc., was hired by Wellsford to design the asbestos abatement work and to monitor Spirco Environmental's work. PMK approved Spirco Environmental's work and approved payment of the balance of the contract before Spirco environmental left the project. (Doc. 61 Attach. 1.)

[5] ICSP alleges it sent a letter to all plaintiffs on July 28, 1998 notifying them of the claims by Wellsford and requesting that they "take all action that is necessary to exonerate and indemnify ICSP from and against any and all liabilities and losses to which it may be exposed as a result of the Wellsford claim." (Doc. 61 Attach. 1 at 8.)

will look to the Missouri choice of law rules to determine what substantive rules of decision apply to this contract dispute. Tompkins v. Erie R.R. Co., 304 U.S. 64 (1938). The court finds that Missouri courts would apply the substantive law of Missouri in the interpretation of these indemnity agreements, using the "most significant relationship" test. See Dillard v. Shaughnessy, Fickel, and Scott Architects, Inc., 943 S.W.2d 711, 715 (Mo. Ct. App. 1997). Absent a choice of law provision in the subject contract, factors to be used in determining what law to apply include the place of contracting, the place of performance, the place of negotiation, the location of the subject matter, and the domiciles of the parties. Id.

Here, the state with the most substantial relationship to this controversy is Missouri. The GAIs were signed in Missouri, which, under Missouri law, is the place of contracting because the signing was the last act necessary to form the contract. Dillard, 943 S.W.2d at 716. All of the plaintiffs are citizens of Missouri. Even though the subject matter of the contract, the asbestos removal, occurred in New Jersey, the factors weigh in favor of Missouri law. The court notes, also, that the law differs very little between Missouri and the other choice, New Jersey. Missouri law supplies the applicable substantive rules of decision.

"[T]he meaning of an unambiguous contract presents a question of law appropriate for summary judgment." McCormack v. Citibank, N.A., 100 F.3d 532, 538 (8th Cir. 1996). "Conversely, the interpretation of an ambiguous contract presents a question of fact, thereby precluding summary judgment." Id. (quoting Michalski v. Bank of Am. Ariz., 66 F.3d 993, 996 (8th Cir. 1995)). Whether the contract is ambiguous is a question of law, and a contract is not ambiguous just because the parties disagree as to its meaning. Sligo, Inc. v. Nevois, 84 F.3d 1014, 1019 (8th Cir. 2005).

"The primary rule in interpretation of contracts is to ascertain the intent of the parties and give effect to that intent." Farm Bureau Town & Country Ins. of Missouri v. Hilderbrand, 926 S.W.2d 944, 947 (Mo. Ct. App. 1996). "Intent is to be determined from the contract alone and not based on extrinsic or parol evidence unless the contract is

-8-

ambiguous." Care Center of Kansas City v. Horton, 173 S.W.3d 353, 355 (Mo. Ct. App. 2005). "An ambiguity arises where there is duplicity, indistinctness or uncertainty in the meaning of the words used in the contract[,]" Farm Bureau, 926 S.W.2d at 947, or when the "terms are reasonably open to more than one meaning . . . ." Care Center of Kansas City, 173 S.W.3d at 355.

The relevant provision in the GAIs is not ambiguous. By it the signatories agreed to indemnify the surety for all fees incurred "by reason of having executed any Bond." (Doc. 62 Exs. 2,3.) Other courts have held that "by reason of" means "because of," and lends itself to a "but-for" causation test. See Pacific Insurance Co., Ltd. v. Eaton Vance Mgmt., 369 F.3d 584, 589 (1st Cir. 2004); General Insurance Co. of Am. v. K. Capolino Constr. Corp., 908 F. Supp. 197, 199-200 (S.D.N.Y. 1995).

In Pacific Insurance, the court stated, "we consider the language unambiguous: 'by reason of' means 'because of,' Black's Law Dictionary 201 (6th ed. 1990), and thus necessitates an analysis at least approximating a 'but-for' causation test." 369 F.3d at 589. In General Insurance, the court found that the language "by reason of having executed any bond" required the court to determine whether the surety had incurred any expenses "because it executed the bonds" under the terms of the performance bonds. 908 F. Supp. at 199-200.

These cases are persuasive. The GAIs in this case expressly provide that plaintiffs are to indemnify ICSP for any expenses "by reason of having executed any Bond." This means that, "but for" having executed this bond, it would not have to pay these fees and costs. Had ICSP not executed this bond, it would not have participated in the arbitration and incurred the costs.

Plaintiffs argue that ICSP was not required to participate in arbitration and did so voluntarily. This argument misapplies the "but for" test. ICSP would not have participated in the arbitration "but for" having executed the bond. Had it not executed the bond, the record does not indicate any reason other than its potential obligation under the bond why ICSP would have participated in the arbitration; the record shows it only did so because of its status as surety. All plaintiffs

signed either one or both of the GAIs. Therefore, under the unambiguous terms of the GAIs, all plaintiffs are liable as signers of the GAIs to ICSP for the costs and fees associated with its participation in the arbitration.

Further, ICSP acted in good faith when arbitrating. ICSP relies on Nat'l Surety Corp. v. Prairieland Constr. Inc., 354 F. Supp. 2d 1032 (E.D. Mo. 2004), for its proposition that, once it provided plaintiffs with prima facie evidence of its fees, absent a showing of bad faith, it is entitled to these fees and costs. In National Surety, the indemnity agreement language was as follows:

> The Indemnitors will indemnify the Surety against all liability, loss, costs, damages, fees of attorneys and other expenses which the Surety may sustain or incur **by reason of, or in consequence of the execution of such Bonds** . . . including but not limited to sums paid or liabilities incurred in settlement of and expenses paid or incurred in connection with the claims, suits or judgments under such Bonds, expenses paid or incurred in enforcing the terms hereof, in procuring or attempting to procure release from liability, or in recovering or attempting to recover losses or expenses paid or incurred, as aforesaid . . . .

National Surety, 354 F. Supp. 2d at 1036 (emphasis added). In that case, National Surety paid "significant sums under the bonds" to the property owners. National Surety then sought indemnification for the amounts paid on the bonds, with interest, attorneys fees, and expenses. Id. at 1036. The court found that the language in the indemnity agreement clearly extended to defendant a duty to indemnify National Surety for the sums it had paid under the bonds, including attorneys fees, interest and expenses. Id. The court held that absent a showing of bad faith on the part of National Surety, the indemnitors were to pay National Surety the sums owed. Id. at 1037.

Defendant ICSP argues that under National Surety, it is entitled to attorneys' fees and expenses because plaintiff has not showed that its actions were in bad faith. This court agrees.

In the instant case, the language of the GAIs is clear that plaintiff were to indemnify ICSP for its attorneys' fees and costs. And plaintiffs have not shown that ICSP acted in bad faith when participating in the arbitration. "Bad faith is not simply bad judgment

-10-

or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity." United States Fid. & Guar. Co. v. Feibus, 15 F. Supp. 2d. 579, 585 (M.D. Pa. 1998); Truck Ins. Exch. v. Prairie Framing, LLC, 162 S.W.3d 64, 94 (Mo. Ct. App. 2005) ("Bad faith goes beyond an honest mistake."). Plaintiffs have set forth no facts that ICSP was acting with any dishonest purpose when participating in the arbitration.

ICSP did not act in bad faith by participating in the arbitration, because thereby it was avoiding the strong prospects of a future lawsuit. ICSP argues that it would have either been compelled to arbitrate by a court order, or would have faced judicial action by Wellsford in any event, even if it had not arbitrated the dispute.

Further, the performance bond is incorporated in the construction contract, and the construction contract required disputes to be arbitrated. Therefore, as ICSP asserts, under Hoffman v. Fidelity & Deposit Co. of Maryland, 734 F. Supp. 192 (D.N.J. 1990), it could have been compelled to arbitrate. In Hoffman, the court found the surety was required to arbitrate because the performance bond, with its arbitration provision, was incorporated by reference into the construction contract, as in this case. (See Doc. 62, Attach. 1 at 2.) Relying on Hoffman, ICSP acted reasonably by assuming it could be compelled to arbitrate.

Plaintiffs argue that ICSP acted unreasonably in participating in the arbitration because it did not have a judicial determination that it was required to arbitrate, which they assert is necessary under Gloucester City Board of Ed. v. American Arbitration Assoc., 755 A.2d 1256, (N.J. Super. 2000). In Gloucester, the court held that the courts, not the arbitrator, must determine whether a party must submit its claims to arbitration. It did not rule that a party must first obtain a court order before arbitrating. Further, even if Gloucester did require a court order, that case was not decided until 2000, after ICSP decided to participate in the arbitration, which began in 1998. And even if ICSP's actions were unreasonable as plaintiff argues, bad faith requires more than unreasonable behavior; ICSP must have acted with a dishonest purpose.

Further, ICSP did not act in bad faith by proceeding without consent from all parties to the GAIs. ICSP attempted to obtain consent from Spirco Environmental, and proceeded in the arbitration after receiving representations from Spirco Environmental's attorney that it did in fact have consent. Spirco Environmental's attorney signed the consent agreement. There is no indication from the facts that defendant ICSP acted in bad faith by not obtaining or seeking consent from all the plaintiffs.

Further, plaintiffs argue that the surety never executed a bond on behalf of the principal as required by the GAIs. The GAIs provide that a bond must be issued by the surety, and defines "surety" as

> American Home Assurance Company, Granite State Insurance Company, The Insurance Company of the State of Pennsylvania, National Union Fire Insurance Company of Pittsburgh, Pa., New Hampshire Insurance Company, and any person or company joining with any of them in executing any Bond, executing any Bond at its request, or providing reinsurance to it with respect to any Bond.

(Doc. 61 Ex. M1.) Plaintiffs argue that because the GAIs use the word "and" to link together all the referenced companies, all must have executed the bond for there to be a surety. Here, they argue, only ICSP did so, and, therefore, no bond was ever executed on behalf of the "Surety." To interpret the GAIs in this way renders them meaningless, which could not have been the intent of the parties. See Farm Bureau Town & Country Ins. of Mo., 926 S.W.2d at 947.

The language of the GAIs is unambiguous and requires plaintiffs to indemnify ICSP. Plaintiffs have not proffered evidence that ICSP acted in bad faith. Therefore, plaintiffs' motion for summary judgment on their declaratory judgment action is denied and defendant ICSP's motion for summary judgment on plaintiff's claim for declaratory judgment is sustained.

**B. Count I of Defendant's Counterclaim**

Both plaintiffs and defendant ICSP moved for summary judgment in their favor on Count I of ICSP's counterclaim for indemnification under the GAIs.

#### i. Plaintiffs' Affirmative Defenses

Plaintiffs argue that, even if the indemnity agreement provides that they are to indemnify ICSP, their affirmative defenses of laches, estoppel, and waiver preclude summary judgment in ICSP's favor. Plaintiffs assert that, by waiting until 2004 to send a bill for its fees, plaintiffs, specifically Joel Spirtas, have been prejudiced. Specifically, Spirtas by then had filed for bankruptcy (Doc. 69 at 2-4), and the filing of ICSP's claim, when it was filed, was to Joel Spirtas's detriment. Plaintiffs also argue that the remaining plaintiffs, (Spirtas Company, Arnold Spirtas, Spirco Environmental, Spirtas Industrial, Service Contractors, Abatement Services, and Sandra Spirtas), were prejudiced, because they were deprived of their right to submit any potential indemnification claim against Joel Spirtas for determination in the bankruptcy proceedings.

The defense of laches is "neglect for an unreasonable and unexplained length of time, under circumstances permitting diligence, to do what in law should have been done." Elton v. Davis, 123 S.W.3d 205, 211 (Mo. Ct. App. 2003)(quoting Hagely v. Bd. of Educ. of Webster Groves Schl. Dist., 841 S.W.2d 663, 669 (Mo. banc 1992). The delay must prejudice the plaintiffs. Id. "[A]s a general rule the doctrine of laches will not bar a suit before expiration of the period set forth in the applicable statute of limitations in the absence of special facts demanding extraordinary relief." State ex rel. General Electric Co. v. Gaertner, 666 S.W.2d 764, 767 (Mo. banc 1984). Further, any injustice plaintiffs suffer must be caused by the delay, not their own wrongdoing or some other factor. Higgins v. McElwee, 680 S.W.2d 335, 341 (Mo. Ct. App. 1984). Here, the statute of limitations had not yet run when ICSP first sought payment or filed this lawsuit, which, under the general rule, would not prohibit ICSP's claim.[6] However, plaintiffs argue they

---

[6]The statute of limitations on an action for breach of a written contract for the payment of money is ten years. See Mo. Rev. Stat. § 516.110 (2000); Hughes Development Co. v. Omega Realty Co., 951 S.W.2d 615, 617 (Mo. banc 1997). The bond was issued in 1997 and arbitration began in 1998. Thus, ten years had not passed when ICSP made its claim for indemnification.

have been prejudice by not having this claim extinguished in bankruptcy, and that this is an extraordinary circumstance.

Joel Spirtas's bankruptcy action is not an extraordinary circumstance. His failure to include ICSP as a creditor was of his own doing--not ICSP's. (Doc. 78 at 8.) He was required to list all creditors with claims, whether these claims were "reduced to judgment, liquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(a)(5); See United States Agricultural Stabilization and Conservation Service v. Gerth, 991 F.2d 1428, 1433 (8th Cir. 1993) ("for an obligation to pay to arise prepetition, the debt must be 'absolutely owed' prepetition."). The key is "whether the events giving rise to the debt occurred before bankruptcy." In re Donnay, 184 B.R. 767, 787 (D. Minn. 1995).

Here, Spirtas commenced his bankruptcy action after the conclusion of the arbitration. He was aware ICSP had participated in the arbitration and was aware he had signed the GAIs. Whether ICSP had made a formal request for the fees at that time did not preclude him from including it as a creditor in his bankruptcy proceeding. His failure to include ICSP as a creditor prejudiced him, and "one whose prejudice is largely self-imposed may not prevail on the affirmative defense of laches." Higgins, 680 S.W.2d at 341.

The defenses of waiver and estoppel are two distinct theories. Shahan v. Shahan, 988 S.W.2d 529, 534 n.1 (Mo. banc 1999). "[E]stoppel requires '(1) an admission, statement, or act inconsistent with the claim afterwards asserted and sued upon, (2) action by the other party on the faith of such admission, statement, or act, and (3) injury to such other party, resulting from allowing the first party to contradict or repudiate the admission, statement, or act.'" Brown v. State Farm Mut. Auto. Ins. Co., 776 S.W.2d 384, 386 (Mo. banc 1989) (quoting Mississippi-Fox Drainage Dist. v. Plenge, 735 S.W.2d 748, 754 (Mo. Ct. App. 1987)).

Here, rather than its action, defendant ICSP's inaction is argued to be the basis of the estoppel defense. "[A]n estoppel may arise under certain circumstances from silence or inaction as well as from words or actions." UAW-CIO Local No. 31 Credit Union v. Royal Ins. Co., Ltd.,

-14-

594 S.W.2d 276, 283 (Mo. banc 1980)(quoting 28 Am. Jur.2d Estoppel and Waiver § 53). However, mere silence or inaction is not enough. "[T]here must be a right and opportunity to speak, and in addition, an obligation or duty to do so." Id.; Bass v. Rounds, 811 S.W.2d 775, 779 (Mo. Ct. App. 1991) (absent a duty to act, there is no basis for estoppel).

Here, ICSP was under no duty to inform plaintiffs of its intent to seek the attorneys' fees and costs owed it under the GAIs. Absent such a duty, estoppel is not available to plaintiffs.

In contrast, waiver is "the intentional relinquishment of a known right" and, if "implied from conduct, the conduct must clearly and unequivocally show a purpose to relinquish the right." Brown, 776 S.W.2d at 386-87 (quoting Shapiro v. Shapiro, 701 S.W.2d 205, 206 (Mo. Ct. App. 1985)). Prejudice is an element of estoppel, but not of waiver. Brown, 776 S.W.2d at 387. The record is void of any facts that show ICSP clearly relinquished its right to indemnification under the GAIs.

### ii. Reasonableness of Fee Claim

ICSP invokes the provision of the GAIs that establishes a prima facie showing of the amount of expenses to which it is entitled. As quoted above, that provision requires an "itemized statement of loss and expense incurred by [ICSP], *sworn to by an officer of Surety*" which establishes "prima facie evidence" of the amount due to ICSP. (Doc. 62 Exs. 2, 3)(emphasis added). ICSP argues it complied with this provision by the November 24, 2004, demand letter, plus attachments, to plaintiffs. The court disagrees. Whether or not the material provided to plaintiffs was a sufficiently itemized statement of loss and expense, the statement was not made under oath or otherwise sworn to by an officer of ICSP.

Plaintiffs argue that the fees sought by ICSP are unreasonable, because ICSP has not provided documentation of its fees, and that the GAIs only provide for reimbursement of "attorney fees," which means only one attorney. (Doc. 67 at 22-23.) The court does not interpret

-15-

"attorney fees" to include fees for only one attorney; the GAIs did not expressly limit reimbursement to the fee of only one attorney. Absent a clearer showing that the intent of the parties was to reimburse fees for a single attorney, this court will not interpret the language in such a way. After reviewing the parties' filings on the issue of the amount to which ICSP is entitled, the court concludes that a genuine issue of material fact exists with respect to the amount to which defendant ICSP is entitled. Summary judgment will be denied on this issue.

### iii. Statutory Interest

ICSP argues it is entitled to interest on its claims either under Mo. Rev. Stat. § 433.050, or in the alternative, Mo. Rev. Stat. § 408.020. Section 433.050 provides:

> When any bond, bill or note for the payment of money or delivery of property shall not be paid by the principal debtor, according to the tenor thereof, and such bond, bill or note, or any part thereof, shall be paid by any surety thereto, the principal debtor shall refund to such surety the amount or value so paid, with interest thereon at ten percent per annum from the time of such payment.

See Mo. Rev. Stat. § 433.050. Plaintiffs argue that New Jersey law should apply. However, the court has already determined that Missouri law applies to this case. Further, statutory interest is a procedural matter, see Missouri Pac. R.R. Co. v. Moss, 531 S.W.2d 82, 90 (Mo. Ct. App. 1975), and this court will apply the law of the forum state, Missouri, to procedural issues. See Maddox v. American Airlines, Inc., 298 F.3d 694, 699 (8th Cir. 2002). However, ICSP is not seeking reimbursement for payment of a bond, bill, or note. In the arbitration, it was successful on its position that it did not owe Wellsford payment on its bond. This statute does not apply to the case at bar. See National Surety, 354 F. Supp. 2d 1040 (court awarded interest on the bonds paid by surety, *plus* attorneys fees and expenses, and did not award interest on the attorneys' fees).

However, in the alternative, defendant ICSP argues that Mo. Rev. Stat. § 408.020 applies. This statute provides:

> Creditors shall be allowed to receive interest at the rate
> of nine percent per annum, when no other rate is agreed upon,
> for all moneys after they become due and payable, on written
> contracts, . . . .

See Mo. Rev. Stat. § 408.020. This statute applies when the amount is liquidated and certain, but an exception exists for when the amount is for the "reasonable value of services rendered." Farmland Industries, Inc. v. Frazier-Parrott Commodities, 111 F.3d 588, 592 (8th Cir. 1997). "Even though the claim is unliquidated in the sense that the amount due is to be measured and determined by the standard of the reasonable value of the attorney's services, a court must grant prejudgment interest on that claim." Id.

Here, ICSP is entitled to statutory interest of nine percent under § 408.020. The parties entered into a contract for the indemnification of attorneys' fees and costs. This court has determined that plaintiffs are liable for fees and costs under that contract. The court will award statutory interest at the rate of nine percent per annum from November 29, 2004.

An appropriate Order is issued herewith.

/s/ David D. Noce
_____
**DAVID D. NOCE**
**UNITED STATES MAGISTRATE JUDGE**

Signed on May 9, 2006.