UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION


SPIRTAS COMPANY, d/b/a            )
Spirtas Wrecking Company,         )
f/k/a Arnold R. Spirtas Company,  )
SPIRCO ENVIRONMENTAL, INC.,       )
f/k/a Spirco Services, Inc.,      )
SPIRTAS INDUSTRIAL SERVICES, INC., )
SERVICE CONTRACTORS, INC.,        )
ABATEMENT SERVICES, INC.,         )
ARNOLD R. SPIRTAS,                )
SANDRA T. SPIRTAS, and            )
JOEL A. SPIRTAS,                  )
                                  )
            Plaintiffs,           )
                                  )
        v.                        )        No. 4:05 CV 100 DDN
                                  )
THE INSURANCE COMPANY OF          )
THE STATE OF PENNSYLVANIA,        )
                                  )
            Defendant.            )

## MEMORANDUM

This matter is before the court on the motion of defendant The Insurance Company of the State of Pennsylvania (ICSP or defendant) for summary judgment. (Doc. 103.) The parties have consented to the authority of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Doc. 17.)


### Procedural Background and Pleadings

Plaintiffs Spirtas Company, Spirco Environmental, Inc., Spirtas Industrial Services, Inc., Service Contractors, Inc., Abatement Services, Inc., Arnold R. Spirtas, Sandra T. Spirtas, and Joel A. Spirtas brought this action, alleging that Spirco Environmental was hired to perform asbestos removal for Wellsford Commercial Properties, LLC, in 1997. Defendant ICSP served as a surety on the project. A dispute arose regarding that work and Wellsford submitted a claim on the ICSP bond. All claims between Wellsford, Spirco Environmental, and ICSP were arbitrated beginning in 1998. The arbitration panel found in favor of Spirco Environmental in 2002. By letter to plaintiffs dated November 29, 2004, defendant ICSP claimed indemnification in the amount of

$810,475.57 for its legal fees for its participation in the arbitration. Plaintiffs contended that they had no obligation under the indemnity agreements entered into between the parties to indemnify defendant. [1]

Both sides moved for summary judgment, and this court ordered that partial summary judgment be entered in favor of defendant ICSP, finding that the indemnity agreements did make plaintiffs, as signatories of the agreements, liable for defendant's legal expenses incurred during the arbitration. (Docs. 91, 92.) However, this court did not order summary judgment as to the amount of damages to which defendant was entitled. (Doc. 92.) So the only issue before this court now is the amount of damages defendant is entitled to under the indemnity agreements.

Defendant moved for summary judgment on the damages issue. It argues that it is entitled to $794,964.38 in legal fees together with statutory pre-judgment interest in the amount of $118,003.21, for a total of $912,967.59. Defendant argues that it has shown an itemized statement supporting its request for legal fees, and plaintiffs have not shown that defendant acted in bad faith when acquiring these fees, nor that the fees are unreasonable.

Plaintiffs argue that questions of fact remain about the amount of damages, and defendant's motion should be denied. They argue that the 2,437.3 hours of legal work, totaling $540,497.60, the expert hours of 1,433.25, totaling $243,931.40, and $10,535.38 in miscellaneous fees, is unreasonable. They argue that the services of attorney James Ferrucci and expert John Walsh were not helpful during arbitration and that both were present on days before they presented ICSP's case-in-chief, and that ICSP's case was duplicative of previous testimony.

**Summary Judgment Standard**

Summary judgment must be granted, when the pleadings and proffer of evidence demonstrate that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Citrate, 477 U.S. 317, 322 (1986);

---

[1]For a more thorough discussion of the procedural background and pleadings in this case, see Doc. 91.

Union Elec. Co. v. Southwestern Bell Tel. L.P., 378 F.3d 781, 785 (8th Cir. 2004).  The court must view the evidence in the light most favorable to the nonmoving party and accord it the benefit of all reasonable inferences.  Union Elec. Co., 378 F.3d at 785.  A fact is 'material' if it might affect the outcome of the case, and a factual dispute is 'genuine' if substantial evidence exists so that a reasonable jury could return a verdict in favor of the non-moving party.  Die-Cutting Diversified, Inc. v. United National Ins. Co., 353 F. Supp. 2d 1053, 1055 (E.D. Mo. 2004).

Initially, the moving party must demonstrate the absence of an issue for trial.  Celotex, 477 U.S. at 323.  Once a motion is properly made and supported, the nonmoving party may not rest upon the allegations in its pleadings but must instead proffer admissible evidence of specific facts showing that a genuine issue of material fact exists.  Fed. R. Civ. P. 56(e); Howard v. Columbia Pub. Sch. Dist., 363 F.3d 797, 800 (8th Cir. 2004), cert. denied, 2004 WL 2153070 (U.S. Nov. 1, 2004); Krein v. DBA Corp., 327 F.3d 723, 726 (8th Cir. 2003).

## Undisputed Facts

In February 1997, plaintiff Spirco Environmental, an asbestos abatement company, and Wellsford Commercial Properties, LLC, entered into a contract whereby Spirco Environmental would remove asbestos from a building in New Jersey for $2,833,859.00.  As a condition of this contract, Spirco Environmental obtained a performance bond on the project from defendant ICSP.

Spirco Environmental and ICSP also entered into two other contracts, captioned "General Agreement of Indemnity." (Doc. 62 Ex. 2, 3.)  Both agreements provided, in relevant part:

> [u]ndersigned agree to pay to Surety upon demand any premium due and all loss and expense, including attorney fees, incurred by Surety by reason of having executed any Bond. An itemized statement of loss and expense incurred by Surety, sworn to by an officer of Surety, shall be prima facie evidence of the fact and extent of the liability of Undersigned to Surety in any claim or suit by Surety against Undersigned.

(Doc. 62 Exs. 2, 3.)  All plaintiffs signed at least one indemnity agreement.

A dispute arose between Wellsford and Spirco Environmental regarding the asbestos removal contract.[2]  Wellsford submitted a claim on the ICSP performance bond, which ICSP denied after an investigation into the dispute.  Wellsford and Spirco Environmental submitted their dispute to the American Arbitration Association through an arbitration clause in the asbestos removal contract.  (Doc. 60 at 2.)  Wellsford sought $4 million in damages for Spirco Environmental's alleged breach of the contract.  In addition to Wellsford's claims against Spirco Environmental, it asserted a counterclaim against ICSP and sought to join ICSP as a party, alleging that ICSP failed to perform its obligations under the bond in bad faith.

ICSP participated in the arbitration, and this court determined that the indemnity agreements signed by the plaintiffs required them to pay ICSP the fees it acquired while participating in the arbitration. (Docs. 91, 92.)

There were 44 arbitration hearings, and counsel for ICSP, James Ferrucci, was present at all 44.  ICSP's expert, John Walsh, attended 43 of the hearings.  Defendant began its case-in-chief on day 38 of the hearings.  Defendant's counsel had cross-examined witnesses on previous days of the hearings.

In August 2002, the arbitration panel entered an award in favor of Spirco Environmental.  (Doc. 60 at 8.)  The panel found that the finding for Spirco Environmental was dispositive of Wellsford's claims against ICSP.  By letter dated November 24, 2004, and received by plaintiffs on November 29, 2004, ICSP demanded payment of $810,475.57 from the

_____

[2]After Spirco Environmental claimed it had performed all of the asbestos removal work under the contract, Wellsford alleged that asbestos had been found in the building.  Wellsford refused to pay Spirco Environmental the $150,733 balance left on the contract.  (Doc. 61 Attach. 1.)

-4-

plaintiffs under the indemnity agreements.[3]  (Doc. 60 at 9, Exs. 12, 13.)

Attorney James Ferrucci is a partner at Wolff & Samson, PC, and has been practicing law since 1972.  For the previous 17 years, he has represented surety companies.  The firm is located near New York City, in New Jersey.  He performed 2,278 hours of the 2,437.3 hours performed on the Wellsford arbitration, or 93.10 percent of the services for ICSP during the arbitration. (Doc. 105.)  He was the only attorney to attend hearings during the Wellsford arbitration.  Attorney Armen Shahinian, also a partner and chair of the firm's Fidelity and Surety Law Department, has practiced surety law for 25 years.  He performed 70.4 hours, or less than three percent of the work on the Wellsford arbitration.  (Doc. 105.)  Wolff & Samson billed ICSP $185 an hour for these two partners' time until the end of 2000, when it began to charge $195 an hour for their time.  (Doc. 103 Attach. 1, Doc. 105.)

In addition to the above two partners' time, partner Darryl Weissman billed 0.3 hours, associate Andrew Kent billed 2.2 hours, associate Denise Pipersburgh billed 8.2 hours, associate Kenneth Cerullo billed 38.3 hours, associate Lisa Cornacchia billed 83.5 hours, associate Jennifer Critchley billed 6.1 hours, paralegal Cheryl Perzley billed 1.2 hours, and Marie Brockway billed 2.9 hours.  The firm charged between $125 and $155 per hour for the associates' time, and the paralegal and Marie Brockway were assessed $75 to $95 for their time. (Doc. 105.)  Further, expert John Walsh billed ICSP $243,931 for 1,433.25 hours of work.  (Doc. 61 Ex. M14.)

ICSP determined that the legal fees charged by Wolff & Samson concerning the Wellsford Arbitration were reasonable, and paid them. The rates charged to ICSP were the rates normally charged by Wolff & Samson in surety cases.

---

[3]ICSP alleges it sent a letter to all plaintiffs on July 28, 1998 notifying them of the claims by Wellsford and requesting that they "take all action that is necessary to exonerate and indemnify ICSP from and against any and all liabilities and losses to which it may be exposed as a result of the Wellsford claim."  (Doc. 61 Attach. 1 at 8.)

Defendant ICSP now seeks $794,964.38 in attorneys fees.[4]  It also seeks nine percent interest calculated from May 9, 2006, when the court entered summary judgment in favor of defendant, for a total of $912,967.59.

## Discussion

Defendant ICSP moved for summary judgment, arguing that it has provided the court with prima facie evidence of the legal fees it paid, and that, pursuant to the court's previous order, plaintiffs are liable for the amount.  Plaintiffs argue that the fees are unreasonable because defendant's participation in the arbitration was duplicative and not helpful in the outcome.

ICSP invokes the provision of the indemnity agreements, quoted above, that requires a prima facie showing of the amount of expenses to which it is entitled.   It argues that it has provided prima facie evidence that plaintiffs have not rebutted because they have not shown that defendant incurred these fees in bad faith.

Defendant ICSP has supplied this court with much information about the hours worked, the hourly rates of each person involved in the arbitration, evidence of the reasonableness of the rate, and a sworn affidavit of the vice president of ICSP that proves the costs were incurred. (Doc. 61 Attach. 24, Doc. 105, 107 and attachments.)  This satisfies the prima facie requirement of the indemnity agreements.

To the extent plaintiffs argue that defendant was acting in bad faith when it participated in the arbitration, this court already determined that ICSP did not act in bad faith.  (Doc. 91 at 11.)  "Bad faith is not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity."  United States Fid. & Guar. Co. v. Feibus, 15 F. Supp. 2d. 579, 585 (M.D. Pa. 1998).  Plaintiffs have provided no evidence here that the fees were incurred by defendant with a dishonest purpose.

---

[4]This amount excludes charges for legal services incurred concerning the Nebraska Revenue Department bond and the McCarthy bond, which ICSP dismissed. (Doc. 103 Attach. 1.)

Plaintiff also argues that the fees are unreasonable.  As a matter of public policy, it has been held that a reasonableness term is implied in every contract.  <u>Kaminsky v. Kaminsky</u>, 29 S.W.3d 388, 390 (Mo. Ct. App. 2000); <u>see also</u> <u>Farmland Industries, Inc. v. Frazier-Parrott Commodities</u>, 111 F.3d 588, 591-92 (8th Cir. 1997) (review claim for attorney's fees under contract and ensure those fees are reasonable).

The hours ICSP paid for are not unreasonable.  The record shows that ICSP's counsel expended a total of 2,437.3 hours defending itself in this arbitration.  (Doc. 105.)  Plaintiffs argue that this amount of hours is unreasonable because it was unreasonable for defendant's counsel to attend every arbitration hearing, when he did not examine witnesses on some of those days and did not begin its case-in-chief until day 38.

It was not unreasonable for ICSP's attorney to attend every arbitration hearing.  ICSP put on its own case-in-chief, and to prepare, it is reasonable for its attorney to attend and listen to other testimony.  Further, counsel for ICSP cross-examined witnesses. (Doc 118 at 9.)  It is very reasonable for counsel to hear the testimony of witnesses before cross-examining them.  Further, testimony can be longer or shorter than planned for a given witness, and rigid scheduling is not possible during arbitration hearings.

Plaintiffs also argue that it was unreasonable for ICSP's expert to attend 43 days of hearing testimony when he only testified one day.  Defendant argues the expert's expertise was necessary throughout the hearing because the subject matter was technical.  The court agrees with defendant.  It is reasonable for an attorney to want someone with expertise in the subject matter to assist in understanding the testimony to help prepare for the client's case-in-chief and cross-examination.

Further, the work done by Spirco Environmental's and defendant's attorneys was not duplicative.  Each party had its own interest in this arbitration.  Spirco Environmental's attorney could not be expected to protect defendant's interest.  Even if one were to speculate in hindsight that ICSP's efforts were not helpful, at that time, ICSP was not sure it or Spirco Environmental would be successful in the arbitration.  It was not unreasonable for it to want to protect itself

from a potentially expensive decision.  The arbitration panel determined that Spirco Environmental's victory was "dispositive" of ICSP's claims because that was the logical result; ICSP, as surety, would only have been liable if Spirco Environmental was.  It is not, as plaintiffs argue, a determination that Spirco Environmental's counsel also disposed of ICSP's claim, with no help from ICSP's counsel.

The hours expended on this case were reasonable given that this dispute, from the beginning up until the hearings were complete, covered the years from 1998 until 2002.  During that time, there was discovery, including depositions and document inspection.  Before the arbitration, there were two separate mediation sessions.  Much time was spent settling the dispute between Wellsford, Spirco Environmental, and ICSP.

Plaintiffs do not argue that the rates charged by the attorneys to ICSP were unreasonable, and the court finds that they were not unreasonable.  When determining whether an hourly rate is reasonable, the court can consider the prevailing market rate and experience.  <u>Haniq v. Lee</u>, 415 F.3d 822, 825 (8th Cir. 2005).  Other factors include:

> the novelty and difficulty of the questions; the skill required to perform the legal services properly; the contingent nature of the fee; the amount involved and the results obtained; the experience, reputation and ability of the attorney; and the nature and length of the professional relationship with the client.

<u>Williams v. Trans World Airlines, Inc.</u>, 660 F.2d 1267, 1273 (8th Cir. 1981).  The partners at the law firm charged $185 or $195 an hour, which is not unreasonable hourly rate for partners with their experience in suretyship law.  Ferrucci, whose hours comprised the bulk of the fees, had 17 years experience representing surety companies.  Further, this law firm was located in New Jersey, where these fees would not be excessive.  <u>See</u> <u>Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly</u>, 2006 WL 2547253 (3rd Cir. 2006) (hourly rates of $550 and $175 were not unreasonable in New Jersey).  The subject matter was technical, requiring expert help.  Further, a successful result was achieved; whether Spirco Environmental's attorney or defendant's attorney contributed more toward that result is not for this court to speculate.

Given that the court determined in its May 9, 2006 order that defendant acted in good faith in participating in the arbitration, and that plaintiffs are liable for the claimed fees, the court concludes that plaintiffs are liable for the amount sought by defendant.  The amount is well documented and not unreasonable.  Therefore, defendant's motion for summary judgment is sustained.  Plaintiffs will be ordered to pay defendant ICSP $794,964.38, plus interest thereon at the rate of nine percent per annum from May 9, 2006, until this date, and thereafter at the rate provided by 28 U.S.C. § 1961.

An order in accordance with this memorandum is issued herewith.


**DAVID D. NOCE**
**UNITED STATES MAGISTRATE JUDGE**


Signed on January 5, 2007.